## HERMAN v CITY OF DETROIT

Docket No. 243107. Submitted January 6, 2004, at Detroit. Decided
    January 29, 2004. Approved for publication March 9, 2004, at
    9:05 A.M.

Kathleen Herman, as personal representative of the estate of James
    F. Herman, deceased, brought a wrongful death action in the
    Wayne Circuit Court against the city of Detroit after the decedent
    was electrocuted while working as an electrician in the public
    lighting department of the defendant. The court, John H. Gillis,
    Jr., J., denied the defendant's motion for summary disposition,
    rejecting the defendant's claim of governmental immunity from
    tort liability on the basis of a ruling that the operation of the public
    lighting department constituted a proprietary function not subject
    to governmental immunity, and rejecting the defendant's claim
    that worker's compensation is the plaintiff's exclusive remedy
    after ruling that the plaintiff has established an intentional tort by
    the defendant such that the plaintiff is not limited to worker's
    compensation in terms of remedies. The defendant appealed by
    leave granted.

The Court of Appeals *held*:

1. A governmental agency can be liable for damages for bodily
injury or property damage caused by the performance of a propri-
etary function. MCL 691.1413. To be a proprietary function an
activity must be conducted primarily for the purpose of producing
a pecuniary profit and it cannot be normally supported by taxes
and fees. In this case, the operation of the public lighting depart-
ment is a governmental, not a proprietary, function. The public
lighting department is not involved in a commercial business
serving the general population, and nothing in the record indicates
that its primary purpose is to make a profit. In fact, the operation
of the public lighting department is funded by general tax rev-
enues and operates at a financial loss.

2. To avoid the exclusive remedy of worker's compensation
through the intentional tort exception, MCL 418.131(1), there
must be a deliberate act by the employer and a specific intent that
there be an injury. A thorough review of the deposition testimony
and all other documentary evidence submitted by the parties

makes it clear that the defendant's actions did not constitute an intentional tort. The plaintiff did not submit evidence to counter the deposition testimony of the witnesses to the accident and the events leading up to it that indicated that there was no deliberate act by the defendant and no specific intent to injure the decedent or a disregard of actual knowledge of the certainty of injury. The facts demonstrate that the decedent's death was the result of the decedent's momentary and tragic lapse in judgment while working near a high-voltage electrical line.

Reversed.

1. GOVERNMENTAL IMMUNITY — EXCEPTIONS — PROPRIETARY FUNCTIONS.

A governmental activity that is conducted primarily for the purpose of producing a pecuniary profit and that normally cannot be supported by taxes and fees is a proprietary function; a governmental agency is not immune from liability for bodily injury or property damage arising out of the performance of a proprietary function (MCL 691.1413).

2. WORKER'S COMPENSATION — EXCLUSIVE REMEDY — INTENTIONAL TORT EXCEPTION.

To avoid the exclusive remedy of worker's compensation through the intentional tort exception, there must be a deliberate act by the employer and a specific intent that there be an injury; specific intent is established if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge (MCL 418.131[1]).

*Bendure & Thomas* (by *Mark R. Bendure*) for the plaintiff.

*Ruth C. Carter*, Corporation Counsel, and *Sheri L. Whyte*, Assistant Corporation Counsel, for the defendant.

Before: OWENS, P.J., and SCHUETTE and BORRELLO, JJ.

PER CURIAM. Defendant appeals by leave granted from an order denying its motion for summary disposition, brought pursuant to MCR 2.116(C)(7), (8), and (10), in this wrongful death action. We reverse.

Plaintiff's decedent, an electrician employed by defendant for twenty years, was killed on October 15, 1999, when he was struck by an arc of electricity at the Mistersky Power Plant. Plaintiff, decedent's widow, filed suit as personal representative of his estate. Defendant asserts that the trial court erred in finding that the operation of the public lighting department constituted a proprietary function, and by rejecting defendant's defense of governmental immunity on this basis. We agree.

The applicability of governmental immunity is a question of law that is reviewed de novo on appeal. *Baker v Waste Mgt of Michigan, Inc,* 208 Mich App 602, 605; 528 NW2d 835 (1995). Also, the decision to grant or deny a motion for summary disposition is reviewed de novo. *Maiden v Rozwood,* 461 Mich 109, 118-119; 597 NW2d 817 (1999). We review the record in the same manner as the trial court to determine whether the movant was entitled to judgment as a matter of law. *Morales v Auto-Owners Ins Co,* 458 Mich 288, 294; 582 NW2d 776 (1998); *Michigan Ed Employees Mut Ins Co v Turow,* 242 Mich App 112, 114-115; 617 NW2d 725 (2000).

"The purpose of summary disposition is to avoid extensive discovery and an evidentiary hearing when a case can be quickly resolved on an issue of law." *Shepherd Montessori Ctr Milan v Ann Arbor Twp,* 259 Mich App 315, 324; 675 NW2d 271 (2003). "MCR 2.116(C)(7) tests whether a claim is barred because of immunity granted by law, and requires consideration of all documentary evidence filed or submitted by the parties." *Glancy v City of Roseville,* 457 Mich 580, 583; 577 NW2d 897 (1998). When deciding a motion for summary disposition under MCR 2.116(C)(7) or (10), a court must consider the pleadings, affidavits, deposi-

tions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999); *Maiden, supra* at 119-121.

Tort immunity is broadly granted to governmental agencies in MCL 691.1407(1), which provides:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

"A governmental function is 'an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law.'" *Maskery v Univ of Michigan Bd of Regents,* 468 Mich 609, 613-614; 664 NW2d 165 (2003), quoting MCL 691.1401(f). This definition is to be broadly applied. *Maskery, supra* at 614. It "only requires that there be some constitutional, statutory, or other legal basis for the activity in which the governmental agency was engaged." *Hyde v Univ of Michigan Bd of Regents,* 426 Mich 223, 253; 393 NW2d 847 (1986). "Tort liability may be imposed only if the agency was engaged in ultra vires activity." *Adam v Sylvan Glynn Golf Course,* 197 Mich App 95, 97; 494 NW2d 791 (1992), citing *Hyde, supra* at 252-253. A determination of whether an activity was a governmental function must focus on the general activity and not the specific conduct involved at the time of the tort. *Tate v Grand Rapids,* 256 Mich App 656, 661; 671 NW2d 84 (2003). However, a governmental agency can be liable for damages for bodily injury or property damage caused by the performance of a proprietary function. MCL 691.1413.

The proprietary function exception to governmental immunity is set forth in MCL 691.1413, which provides:

> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees. No action shall be brought against the governmental agency for injury or property damage arising out of the operation of proprietary function, except for injury or loss suffered on or after July 1, 1965.

Therefore, to be a proprietary function, an activity: "(1) must be conducted primarily for the purpose of producing a pecuniary profit; and (2) it cannot be normally supported by taxes and fees." *Coleman v Kootsillas,* 456 Mich 615, 621; 575 NW2d 527 (1998).

The first prong of the proprietary function test has two relevant considerations. First, whether an activity actually generates a profit is not dispositive, but the existence of profit is relevant to the governmental agency's intent. *Id.* An agency may conduct an activity on a self-sustaining basis without being subject to the proprietary function exemption. *Hyde, supra* at 258-259; *Codd v Wayne Co,* 210 Mich App 133, 136; 537 NW2d 453 (1995). Second, where the profit is deposited and where it is spent indicate intent. If profit is deposited in the general fund or used on unrelated events, the use indicates a pecuniary motive, but use to defray expenses of the activity indicates a nonpecuniary purpose. *Coleman, supra* at 621-622. To be excluded from the proprietary function exception to immunity, an activity need not actually be supported by taxes or fees if it is a kind normally supported by taxes or fees. *Hyde,*

*supra* at 260 n 32. However, immunity for an activity that is a governmental function can still be forfeited if conducted for profit in such a scope as to render it a private profit-making enterprise. *Kootsillas v City of Riverview*, 214 Mich App 570, 573; 543 NW2d 356 (1995), aff'd sub nom *Coleman v Kootsillas, supra.*

The operation of the public lighting department is a governmental, and not a proprietary, function. First, this Court has already considered this question in *Taylor v Detroit*, 182 Mich App 583, 587-588; 452 NW2d 826 (1989), and concluded that, because the lighting department of the city of Detroit was not involved in a commercial business serving the general population, and because there was nothing in the record to indicate that the lighting department's primary purpose was to make a profit, the operations constituted a governmental function.

In this case, the budget documents submitted by defendant state that the mission of the lighting department is to "provide reliable, economic, high quality lighting and energy services that light the streets for safety and are responsive to the needs of the citizens, business and visitors of the City of Detroit." The budget documents further indicate that expenditures for the lighting department exceeded revenues from 1998 through 2000. The budget documents also indicated that the lighting department was a general fund agency. Because the general fund's primary revenue sources are the general tax levy, and because the lighting department's expenditures come out of the general fund, the operation of the lighting department is supported by taxes. This fact, together with the uncontradicted evidence that the lighting department operates at a loss, establishes the governmental nature of the lighting

department's functions. Defendant was therefore entitled to summary disposition on this issue.

Defendant also contends that plaintiff failed to present facts establishing that decedent's injuries were the result of an intentional tort; therefore, the exclusive remedy provision of the Worker's Disability Compensation Act (WDCA),[1] MCL 418.101 *et seq.*, applies, MCL 418.131(1);[2] and plaintiff is barred from bringing suit against defendant. We agree.

"[W]hether the facts alleged by plaintiff are sufficient to constitute an intentional tort is a question of law for the trial court, while the issue of whether the facts are as plaintiff alleges is a jury question." *Gray v Morley (After Remand)*, 460 Mich 738, 743; 596 NW2d 922 (1999). A trial court's grant or denial of summary disposition is reviewed de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).[3]

---

[1] Under the WDCA, the disability benefits provided by the act are the exclusive remedy of an employee for a work-related injury unless the injury was the result of an intentional tort. *Beauchamp v Dow Chemical Co*, 427 Mich 1, 11; 398 NW2d 882 (1986); *Palazzola v Karmazin Products Corp*, 223 Mich App 141, 147; 565 NW2d 868 (1997).

[2] MCL 418.131(1) provides, in part:

> The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

[3] Plaintiff asserts in her brief on appeal that defendant did not present a motion based on MCR 2.116(C)(10) on the "intentional tort issue" to the court, and hence is restricted to arguing the merits of the denial of the motion for summary disposition under MCR 2.116(C)(7) and (C)(8). However, defendant's motion for summary disposition specifically states,

To avoid the exclusive remedy provision through the intentional tort exception, there must be a deliberate act by the employer and a specific intent that there be an injury. *Travis v Dreis & Krump Mfg Co,* 453 Mich 149, 169 (BOYLE, J.), 191 (RILEY, J.); 551 NW2d 132 (1996); *Palazzola v Karmazin Products Corp,* 223 Mich App 141, 149; 565 NW2d 868 (1997). A deliberate act may be one of commission or one of omission, and a specific intent exists if an employer has a purpose to bring about certain consequences. *Travis, supra* at 169, 171. Specific intent is also established if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. MCL 418.131(1). "To support such conclusions, a plaintiff must be able to allege a specific danger known to the employer that was certain to result in an injury and must allege that the employer required the plaintiff to work in the face of that danger." *Golec v Metal Exchange Corp,* 208 Mich App 380, 383; 528 NW2d 756 (1995), aff'd sub nom *Travis v Dreis & Krump Mfg Co, supra* at 191. An injury is certain to occur if there is no doubt that it will occur, and an employer is deemed to have possessed the requisite state of mind when it disregards actual knowledge that an injury is certain to

---

"pursuant to MCR 2.116(C)(7)(8) and (10) moves for Summary Disposition in its favor based on the following facts and law." Further, plaintiff's counsel conceded that defendant's motion for summary disposition was being evaluated upon the facts of the case and not simply upon the pleadings. According to the holding in *Blair v Checker Cab Co,* 219 Mich App 667, 670-671; 558 NW2d 439 (1996), even if a motion for summary disposition is brought under the wrong subrule, i.e., MCR 2.116(C)(8) when it should have been MCR 2.116(C)(10), where both parties submitted and relied on documentary evidence, the trial court may proceed under the correct subrule as long as neither party is misled. Here, plaintiff submitted and relied on documentary evidence in opposing defendant's motion for summary disposition, hence this Court may properly analyze the denial of the motion for summary disposition according to the standards applicable to a C(10) motion.

occur. *Travis, supra* at 174, 179; *Bock v Gen Motors Corp*, 247 Mich App 705, 711; 637 NW2d 825 (2001). "Knowledge must be actual; constructive, implied or imputed knowledge is not sufficient." *McNees v Cedar Springs Stamping Co (After Remand)*, 219 Mich App 217, 224; 555 NW2d 481 (1996), citing *Travis, supra* at 173. An employer's knowledge of general risks is insufficient to establish an intentional tort. Cf. *Bock, supra* at 711-712; *Agee v Ford Motor Co*, 208 Mich App 363, 366-367; 528 NW2d 768 (1995).

A thorough review of the deposition testimony and all other documentary evidence submitted by the parties makes it clear that defendant's actions did not constitute an intentional tort. There was no evidence submitted by plaintiff to counter the deposition testimony of the witnesses to the accident and the events leading up to it that indicated that there was no deliberate act by defendant and no specific intent to injure decedent. The relevant and dispositive testimony came from decedent's coworker who was with decedent when he was electrocuted. The coworker testified that decedent climbed up a fiberglass ladder until he was within two feet of a 24,000 volt line, that decedent took one foot off the fiberglass ladder, which was not grounded, and placed it on the transformer, which was grounded. Then, decedent flicked dust from his rag and electricity arced from the line to decedent, going to ground through the transformer. The coworker testified that if a person gets within two feet of a 24,000 volt line and grounds himself, he will die. The coworker further testified that an electrician of decedent's long experience would not normally take his foot off an ungrounded ladder in these circumstances and that it was inappropriate for decedent to have done so. The coworker testified that as electricians, he and decedent understood the difference between the way an electrical

current runs, flows, and feeds, and if it is conductive or grounded. Plaintiff offers no testimony that the placement of decedent's foot on the transformer was the result of an act or omission by defendant, i.e., incorrect or incomplete training of decedent or under an order by his supervisor. The facts demonstrate that decedent's death was the result of decedent's momentary and tragic lapse in judgment, not the result of an intentional act by defendant.

Plaintiff argues that defendant committed a series of deliberate acts that resulted in decedent's death and that these acts evidenced an intent to injure decedent, removing the incident from the exclusive remedy provision of the WDCA. The acts alleged by plaintiff are as follows: (1) adoption of a procedure whereby the least experienced people were assigned to the most hazardous location; (2) denial of decedent's request to transfer; (3) placing decedent's supervisor in charge of Mistersky; (4) refusal to comply with Michigan Occupational Safety and Health Administration requirements; (5) no maintenance or training program; (6) requiring employees to work around the clock without sleep under threat of firing; (7) the decision not to de-energize the bus; and (8) requiring decedent to work within two feet of the bus, where he would be struck by arcing electricity.

With respect to the allegations that defendant required decedent to work around the clock under threat of firing, the evidence was that decedent volunteered to work long hours before the accident that caused his death. Additionally, the testimony established that the decedent was an experienced electrician, not one of the "least experienced" employees. The remaining "deliberate acts" cited by plaintiff to illustrate defendant's specific intent to injure decedent do not demonstrate

that defendant had actual knowledge that an injury was certain to occur to decedent and that defendant disregarded that knowledge. The trial court erred in denying defendant's motion for summary disposition on the basis that there was an intentional tort that removed plaintiff's claim from the exclusive remedy provision of the WDCA.

Reversed.