## LUCE v KENT FOUNDRY COMPANY

Docket No. 327978. Submitted May 3, 2016, at Grand Rapids. Decided May 17, 2016. Approved for publication June 16, 2016, at 9:05 a.m.

Andrew R. Luce filed an action in the Montcalm Circuit Court against Kent Foundry Company to recover damages for injuries he suffered while working for defendant on a large piece of equipment called a wheelabrator. Plaintiff sustained the injuries when his hand was crushed between a 10,000-pound door and a steel I-beam. The wheelabrator had operated for a long time during which the dangerous condition that led to the accident periodically arose, and no employee had previously been injured while operating the machine during those times. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff could not produce evidence that defendant intended to injure plaintiff as required by the intentional-tort exception to the exclusive-remedy rule of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*. The court, Suzanne Hoseth Kreeger, J., granted defendant's motion because there was no genuine question of material fact regarding defendant's intent. Plaintiff appealed.

The Court of Appeals *held*:

1. Establishing the intentional-tort exception, MCL 418.131(1), to the exclusive-remedy rule of the WDCA requires that a plaintiff show that the defendant specifically intended to injure the plaintiff and engaged in a deliberate act or omission that caused the injury. An employer intends to injure an employee when the employer willfully disregards knowledge that the employee would certainly be hurt. An employer does not possess actual knowledge of certain injury simply because it houses a wheelabrator that periodically runs without door stoppers intended to prevent the injuries that would occur if an employee was caught in a pinch point created by the wheelabrator's door and an I-beam. The trial court properly granted summary disposition to defendant because plaintiff could not produce evidence that defendant specifically intended to injure him.

2. An employer may be liable for injuries caused by a continuously operative dangerous condition if the employer had knowledge of the condition and failed to inform the employees of the condition so that they were not aware of the need to take precautions. In this case, plaintiff cannot rely on this theory of recovery because he was aware of the dangerous condition and had reported it to the maintenance supervisor. In addition, he had previously gotten his glove pinched in the pinch point and was keenly aware of the danger presented by the piece of machinery when it was without working door stops.

Affirmed.

WORKER'S DISABILITY COMPENSATION ACT — EXCLUSIVE REMEDY — EXCEPTION — INTENTIONAL TORT.

The Worker's Disability Compensation Act, MCL 418.101 *et seq.*, provides the exclusive remedy for workplace injuries with one exception under MCL 418.131(1)—when the injuries are caused by the employer's intentional tort; to invoke the intentional-tort exception, a employee must show that an employer actually intended to injure him or her and that the injury resulted from the defendant's deliberate act or omission; a plaintiff may establish a defendant's intentional tort by showing that the defendant had actual knowledge that an injury was certain to occur, yet the defendant disregarded that knowledge; a defendant's knowledge of a dangerous condition, its failure to correct the condition, and the probability of injury if the dangerous condition was encountered does not establish that an employee was certain to be injured as a result of the dangerous condition, especially when the dangerous condition had been an ongoing problem and no employee had yet been injured.

*Merriman Law Office, PLC* (by *J. Andrew Merriman*), for plaintiff.

*Garan Lucow Miller, PC* (by *John E. McSorley* and *David M. Shafer*), for defendant.

Before: RIORDAN, P.J., and SAAD and MARKEY, JJ.

PER CURIAM. Plaintiff brought a personal injury suit against defendant, his employer, to recover damages under the intentional-tort exception in MCL 418.131(1)

for injuries he sustained at his workplace. Plaintiff appeals the trial court's summary dismissal of his suit pursuant to MCR 2.116(C)(10), and for the reasons provided, we affirm.

The objective of Michigan's workers' compensation laws is to promote prompt and sure compensation for workplace injuries regardless of fault. In exchange for this benefit, the Legislature eliminated civil suits in tort for such injuries, with the very limited exception of intentional torts. MCL 418.131(1). To ensure that this exception would be applied very narrowly, the Legislature defined "intentional tort" in this context to require that the employer actually intend to injure its employee. Here, plaintiff attempts to fit his tort claim within this narrow exception. Accordingly, the sole issue before us is whether defendant actually intended plaintiff's injury, which if true, would constitute an exception to the exclusive remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*. The record shows that the hazardous condition of the machinery that caused plaintiff's injury persisted (periodically) for a long time and never caused an injury to any employee who operated the machine during these hazardous periods. Therefore, it is clear that as a matter of law, defendant did not intend to injure plaintiff, and dismissal of plaintiff's suit is appropriate.

## I. BASIC FACTS

During his employment with defendant, plaintiff was trained to work on a large machine called a wheelabrator.[1] The wheelabrator was used continu-

---

[1] A wheelabrator is a machine that cleans and surface treats industrial parts by blasting steel pellets at the parts placed inside the wheelabrator cabinet. The wheelabrator in this case was very large—its

ously, five to seven days per week, with the exception of a two-hour maintenance period between 4:30 a.m. and 6:30 a.m. While plaintiff was not a main operator of the wheelabrator, he nonetheless operated the machine at least two hours each day he worked.

Testimony showed that the doorstops on the wheelabrator's west door regularly would break off. Steve Miller, the main wheelabrator operator during plaintiff's shift, estimated that these breakages occurred every month or so. Importantly, although these breakages occurred frequently, until plaintiff's injury, no one had ever gotten caught between the door and the I-beam and been injured while operating the machine without the doorstops.

In early August 2012, Miller noticed that one of the doorstops had broken off and notified defendant's maintenance personnel. Plaintiff also noticed that the doorstop was missing and brought it to the attention of David Leary, the maintenance supervisor. However, approximately two weeks elapsed and the doorstops had yet to be repaired. On August 17, 2012, as plaintiff worked on the wheelabrator, his hand was crushed between the door and the I-beam, which caused extensive damage and resulted in the amputation of a portion of a finger.

Plaintiff filed the instant suit and alleged that he was entitled to the recovery of damages under the intentional-tort exception to the exclusive-remedy rule

two doors were more than 11 feet tall and weighed more than 10,000 pounds each. The two doors were referred to as the "east" door and the "west" door. When the west door was opened, it swung and traveled approximately 180 degrees until it struck a vertical steel I-beam, which created a "pinch point." To alleviate this, defendant installed doorstops along the door's hinges. When the doorstops were in place and functional, the door's range of movement was limited and when it opened, it stopped before striking the I-beam, thereby eliminating any pinch point.

of the WDCA. Defendant moved for summary disposition under MCR 2.116(C)(10) and argued that there was insufficient evidence to prove that defendant specifically intended to cause plaintiff's injury. The trial court agreed with defendant and granted its motion.

## II. ANALYSIS

Plaintiff argues that the trial court erred when it granted summary disposition in favor of defendant. We disagree.

### A. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). Summary disposition under MCR 2.116(C)(10) is appropriate if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In deciding a motion under MCR 2.116(C)(10), the trial court considers, in the light most favorable to the nonmoving party, affidavits, pleadings, depositions, admissions, and any other documentary evidence submitted by the parties. *Maiden*, 461 Mich at 120. Further, issues of statutory interpretation and whether an act was an "intentional tort" under the WDCA are questions of law that we review de novo. *Gray v Morley (After Remand)*, 460 Mich 738, 742-743; 596 NW2d 922 (1999); *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 396; 605 NW2d 685 (1999).

### B. DISCUSSION

The pertinent section of the WDCA is MCL 418.131(1), which provides as follows:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

Thus, ordinarily, an employee's sole remedy against an employer for a workplace-related injury is provided by the WDCA. *Bagby v Detroit Edison Co*, 308 Mich App 488, 491; 865 NW2d 59 (2014). In essence, the WDCA "may be viewed as providing 'immunity' from suit." *Harris v Vernier*, 242 Mich App 306, 314; 617 NW2d 764 (2000); see also *Eversman v Concrete Cutting & Breaking*, 463 Mich 86, 92-93; 614 NW2d 862 (2000). In *Herbolsheimer v SMS Holding Co, Inc*, 239 Mich App 236, 240; 608 NW2d 487 (2000), we described the rationale for limiting an employee's remedies:

> Under the WDCA, employers provide compensation to employees for injuries suffered in the course of employment, regardless of fault. In return for this almost automatic liability, employees are limited in the amount of compensation they may collect from their employer, and, except in limited circumstances, may not bring a tort action against the employer. [Quotation marks and citations omitted.]

Consequently, "[t]he only exception to [the exclusive-

remedy] rule is when the employee can show that the employer committed an intentional tort." *Bagby*, 308 Mich App at 491. And "to recover under the intentional tort exception of the WDCA, a plaintiff must prove that his or her injury was the result of the employer's deliberate act or omission and that the employer specifically intended an injury." *Id.*, citing *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 172; 551 NW2d 132 (1996) (opinion by BOYLE, J.). A plaintiff can prove that a defendant had an intent to injure through circumstantial evidence if he establishes that (1) the employer has actual knowledge (2) that an injury is certain to occur (3) yet disregards that knowledge. *Bagby*, 308 Mich App at 491, citing *Travis*, 453 Mich at 180 (opinion by BOYLE, J.).

Because it is undisputed that defendant was aware that the doorstops were missing at the time of plaintiff's injury and had not made any attempt to repair the doorstops, the key to the resolution of this motion is the element regarding the certainty of the injury, i.e., was there evidence that operating the west door without the functional doorstops made plaintiff's injury *certain* to occur?

"This element establishes an 'extremely high standard' of proof that cannot be met by reliance on the laws of probability, the mere prior occurrence of a similar event, or conclusory statements of experts." *Palazzola v Karmazin Prod Corp*, 223 Mich App 141, 149-150; 565 NW2d 868 (1997). We hold that there is no question of fact regarding whether defendant knew that plaintiff's injury was certain to occur. The undisputed evidence is that the doorstops routinely broke and became ineffectual, and during these times when there were no functioning doorstops, the wheelabrator was nonetheless operated without any injury to any

employee. Clearly, there was nothing to inform defendant that an injury was "certain" to occur. As this Court has explained, "The existence of a dangerous condition does not mean an injury is certain to occur. An employer's awareness of a dangerous condition, or knowledge that an accident is likely, does not constitute actual knowledge that an injury is certain to occur." *Bagby*, 308 Mich App at 492-493 (citation omitted); see also *Herman v Detroit*, 261 Mich App 141, 148; 680 NW2d 71 (2004) ("An injury is certain to occur if there is no doubt that it will occur . . . ."); *Palazzola*, 223 Mich App at 150. Here, the evidence merely demonstrates that defendant was aware of a dangerous condition—it was not aware that injury was certain to occur.

Plaintiff's reliance on Leary's averment that an injury was just "a matter of time" is misplaced. Plaintiff posits that because Leary does not mention any "probability, chance, or doubt," then his statement should be viewed as one of certainty, i.e., he believed that someone definitely would be injured. We disagree.

First, Leary later explained that, in his opinion, one would only get injured "if you were doing it and not paying attention." The introduction of such a condition negates any concept of certainty. Second, assuming no such qualification existed, this is precisely the type of evidence that this Court has cautioned would be insufficient to prove this "extremely high standard." *Palazzola*, 223 Mich App at 149. Leary's failure to mention any explicit chance or probability does not transform his opinion into one of certainty. Notably, Leary's statement did not provide that when someone next used the wheelabrator with the doorstops missing that the person was *certain* to get injured. Instead, his statement clearly reflected his reasoned view that the

condition was indeed dangerous and that common sense dictated that, due to the laws of probability, *eventually* someone would get hurt. But these types of dangerous conditions fall well short of establishing a condition that is *certain* to cause injury when the condition is encountered. See *Johnson v Detroit Edison Co*, 288 Mich App 688, 697-698; 795 NW2d 161 (2010) (stating that an employer's knowledge that an accident was likely is insufficient); *Oaks v Twin City Foods, Inc*, 198 Mich App 296, 298; 497 NW2d 196 (1993) ("[I]t is not enough that the employer acted recklessly and even envisioned the type of accident that did in fact occur.").

Plaintiff alternatively relies on the principle that a continuously operative dangerous condition may form the basis for a claim under the intentional-tort exception. However, it is not enough that such a dangerous condition merely exists. The employer must have knowledge of the condition *and refrain from informing the employee about it. Johnson*, 288 Mich App at 698, citing *Travis*, 453 Mich at 178 (opinion by BOYLE, J.). The key is that the employee is left in the dark about the danger he or she will encounter and is therefore "unable to take steps to keep from being injured." *Id*. But in this case, there was no need for defendant to notify plaintiff of the dangerous condition or the nature of the danger because plaintiff brought the danger to defendant's attention a week or two before the accident. Indeed, plaintiff was prompted to notify defendant after plaintiff got part of his glove caught between the door and the I-beam in that very same pinch point. At the time of his accident, plaintiff was clearly aware of the danger and the potential for severe injury. For starters, with the 11-foot high, 10,000-pound door slamming into the steel I-beam every time the door-stops were missing, the potential for serious harm to

plaintiff was obvious. Moreover, assuming arguendo that plaintiff was somehow unaware of the danger he faced, any doubt was erased after his glove got caught in the pinch point, which prompted him to notify management of the dangerous condition. Plaintiff acknowledged that, at the time, he was lucky that no part of his hand was caught between the door and the I-beam in that instance. Therefore, the record is clear that plaintiff's situation is distinguishable from the hypothetical employee described in *Travis* who is unaware of the danger and unable to take steps to protect himself. As a result, plaintiff cannot invoke the continuously operative dangerous condition doctrine to establish that defendant committed an intentional tort.

As the trial court correctly held, plaintiff failed to present any evidence under MCL 418.131(1) that defendant specifically intended to harm him. As a result, the court did not err when it granted defendant's motion for summary disposition.

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

RIORDAN, P.J., and SAAD and MARKEY, JJ., concurred.